May it please the Court, I'm Jonathan Sternberg, and I represent the appellant Howard Patton. Mr. Patton appeals from a judgment revoking his supervised release based on part, based in part on the District Court's finding that he had constructively possessed ammunition. This finding was error and the Court should reverse the District Court's judgment and remand this case for resentencing without this finding, because there were a couple of other findings of how he had violated his supervised release as well. The ammunition at issue, as the Court knows from the briefs, was found in a home that Mr. Patton's mother shared with her felon husband, Mr. Bergen, in a dresser drawer in a room where, in the words of the FBI agent who testified, Mr. Patton quote, infrequently stayed. Also in the drawer were two pieces of mail addressed to Mr. Patton. No forensic or other evidence, though, connected Mr. Patton to the ammunition at all. The law of the United States is and must be that this is insufficient to prove that Mr. Patton constructively possessed the ammunition in the drawer in the bedroom in his mother's and Mr. Bergen's home. As the home was a jointly occupied premises, as this Court held in the Wright case in 2014 and the Lemon case in 2001, possession, to prove constructive possession, the government had to present additional evidence of knowledge that Mr. Patton knew the ammunition was there, rather than merely presenting evidence showing his access and possible proximity to it, which would have sufficed had he, say, owned the home and lived there alone or lived there full-time. Why isn't there circumstantial evidence here in the sense that he identified the room as his own, his personal belongings were found around the ammunition? Why isn't that enough to infer knowledge here? Well, he didn't admit the room was his own. He admitted he stayed there from time to time, to be fair. His actual address where his probation officer said he usually stayed was with his sister. That was registered and the probation officer didn't dispute that he lived there most of the time. As to the personal effects, the only personal effects that were testified to were the two pieces of mail themselves. It's not entirely clear whether they were opened or not. One was from the Missouri Division of Family Services regarding some state benefit. This is on page 12 of the transcript. And something from the United States Department of Agriculture. It's not clear from the transcript what that was either. The mail doesn't suffice because there's no evidence to show who or when either the mail or the ammunition were placed in the drawer. It could have been done by any other occupant of the home at any time. And Mr. Patton's mother's husband, Mr. Bergen, admitted that the ammunition which fit his gun, for which an empty holster also was found in that same drawer, and that's pages 10 to 11 of the transcript, actually belonged to him. But can't the fact finder infer in the absence of evidence that the mail got there some other way that your client might have put it there? And that he might know, at the very least know, that the ammunition is in that drawer. Why can't the fact finder do that? Your Honor, I think your own words say why. You're using the word might. You're using the word possibly. That's speculation. It's entirely speculation. And in the words of this Court just last year in the Ramos case, what there can't be is that the evidence makes it equally possible that, say in this case, Mr. Bergen had the ammunition that Mr. Patton didn't know about. Under these facts, using the words might, it's equally possible that that's the case. And as in Ramos, the Court held that that's not enough. Now, I appreciate Ramos is an actual felon in possession criminal case. So the standard is beyond a reasonable doubt, not preponderance of the evidence like we're dealing with here. But think about the few preponderance cases, frankly, I was able to find. They're on page 16 of our brief. And what's the relevance of that? I want to push you on that because it's highly deferential even on sufficiency of the evidence for beyond a reasonable doubt. You ask whether a fact finder could have reached that conclusion. And here we're taking it down a notch even so, which is that we say now preponderance of the evidence. And so does that change things? Does that make it harder for you to win? Well, of course it makes it harder for me to win. I don't dispute that at all. The reason we have to rely on, unfortunately, a bunch of criminal cases, proper criminal cases for beyond a reasonable doubt is there really isn't a whole lot of law about this kind of constructive possession with the preponderance of the evidence standard. But the few things that there aren't are on page 16 of our brief. And I think using the word might again, the closest one is the Jackson case from the Ninth Circuit in 2016. And that was preponderance because it was about sentencing enhancement. So that was done by a preponderance of the evidence standard as well. There, a gun and drugs were found in a rolled up rug in a garage that the defendant admitted he used, that it was his garage where he kept his car, in a garage. The Ninth Circuit said that that alone, just because he used the garage, it was his, and this was an actual residence unlike here, that the person did occupy full time. The Ninth Circuit said that that's not enough for the same reason, that it's equally possible that under those facts, without more, without the heightened proof requirement that the Court says, that this Court says in Wright and in Lemon and in other cases is required when there is a jointly occupied residence. In Jackson, the Ninth Circuit applied exactly that and said this isn't enough. Simply the fact that he used this garage, that it was his garage, and that there's a, that these items were found in that garage in a jointly occupied residence doesn't meet that heightened proof requirement. And I think even more similar, although it's a state case, so obviously it's probably even less persuasive to this Court than a Ninth Circuit case, is the Thompson case from the Florida Court of Appeals in 2015. There, it's the defendant's own dorm room, although he shared, I guess it was a dorm suite that he shared with a few other people, and in the dresser that he admitted he used, that contained his clothes, attached to the bottom of one of the drawers is a knife. And this is preponderance of the evidence because it was a probation violation under Florida law, and that's how they approached it. What about, you know, I want to ask you, certainly before your time expires, the state makes a big deal out of the fact that he was found in the, he was actually there when the search occurred and that he was in the proximity of where it was found. It's less clear to me what the significance of that is. What's your argument against that particular point? Well, a couple of things. First of all, the state actually, sorry, the state, the government, goes a lot further and argues actually that he exited the bedroom immediately before the search. They say that repeatedly in their reply brief. There's no such evidence of that at all. None. Not a shred. The FBI agent didn't testify that. It did say that on the probation officer's violation report, but the probation officer and the FBI agent didn't testify to the accuracy of that. But let's say he was there at the time. Most of these other cases involved the defendant being there at the time. It's still reversible error. It's still, as Your Honor put it, might. It's still equally possible under, even if he's there, I mean, heck, frankly, even if he was seen exiting the room at the time, you know, the FBI's there searching the house and he comes out of that room, even if that were the case, it's still equally possible under this evidence, without that heightened proof requirement applicable to these jointly occupied premises cases, that Mr. Bergen had the ammunition and Mr. Patton didn't know about it just as Mr. Bergen did. What additionally would have been required to move it from might to probably? Your argument is that it's might right now, and all that needs to be shown is probably, because of preponderance of the evidence. What gets us there? What is missing here, in your view? The best case about that is one the government actually cites. It's the Johnson case from this court in 2007, where the defendant is found asleep in a crack house in a bedroom next to an open box, or a gun, with crack and $1,500 in cash on his person, and then other people say this belonged to him. That's definitely something more, that's more than probably. I mean, frankly, that's probably beyond a reasonable doubt, but at the very least, had my client been found in the room next to an open drawer with the ammunition, I probably wouldn't be standing here speaking to your honors right now. Now the suspense is killing me. What did the Florida court say about the knife under the drawer? Sorry, forgive me, your honor. I didn't finish that. They said that that wasn't enough. They said that just the fact that it was found in that room that other people had access to was not enough, because it was still a jointly occupied premise. But it was his room, and it was his dresser, and it was under the drawer of his dresser? It was a jointly occupied dorm room. Sorry. Even the room itself was jointly occupied? That's my understanding, yes. Well, we can read it ourselves. I see. I have 30 seconds left. I'd like to reserve that. You may. Ms. Dunning, we'll hear from you. May it please the court, my name is Allison Dunning, and I'm arguing this case on behalf of the government. I want to talk about that Johnson case just real briefly, because in that case, the defendant was a resident at a treatment facility. It sounds like from the case, although it wasn't real clear, that he got into some sort of dispute with a treatment provider, and so a search was in this room, and the knife in that case was actually in a recess underneath the drawer, so when you pulled the drawer out, you had to completely remove the drawer to be able to find it. And what's different from that case, from this case, and from other cases that have found the evidence sufficient, is that in that case, there was nothing that was considered a personal effect or an item of venue. And that's a phrase from the Cruz case from the circuit, where they said, where this court identified that, that is an important factor to consider. And in Cruz, they found they had two defendants that were seen to go into a house, they exited, a search was later done, but when the house was searched, there was lots of items that were incriminating. I think there were guns and drugs. There weren't any items or personal effects that could be linked to the two defendants having been convicted of possession of items in that house, and so that was different. And so Johnson is not a key case from the government's perspective. It's outside the district, but it demonstrates that in a jointly occupied premises, without that something tying this defendant to that contraband, that's important for the court to know, and that's not the situation here. With regard to this particular home, this was a jointly occupied home. There were a number of people that resided there. Mr. Patton was violated on a supervised release because one of those was a felon, and he also had not approved that residence with his probation officer. What's different about this case, though, than some of the other cases is that this particular bedroom, there was a comment in my colleague's argument about the status of this room, but there really wasn't any evidence in this hearing that that room was ever stayed in by anyone other than Mr. Patton. Granted, he didn't stay there all the time, he wasn't a full-time resident, but when he described the room, he described it as his officers investigating a bank robbery and diagramming the house, and when it came to that southeast bedroom, he acknowledged that was his room, and when it was labeled on the diagram, it was just labeled as the detective was writing, so he said you instead of I or me, but that was labeled as Mr. Patton's room. Mr. Patton demonstrated an ability to identify other rooms in the house if they were jointly occupied, the actual room, because he identified one of the other bedrooms as Mom's and Greg's room, and so this particular room, there was no record that any other anyone else was in that room at the time of this search. I do want to talk about the time frame in terms of his presence in the room, because that is something that's discussed in other cases where they've noted that this person was located in the room where the contraband was, or that the contraband was within arm's reach of a defendant. I understand the arm's reach point, but in the room, if you don't know something's there, but you're in the room, how does that help? Particularly in light of the fact that we already know that it's a separate fact that he stayed there. He admits to staying there. Right. Well, I think in the circumstances of this case, when there's such an effort to sort of put him there so infrequently, it's important to note that when he was in the house and he was observed in the house, he was observed in the room, and so it may not be the key element, the court not suggesting that the court could find it based on that alone, because that would be suggesting that mere proximity would be sufficient, but it's certainly a factor to consider that he was there and he was within proximity to the item. The government did not necessarily make the argument that the appellant attributes to us that the suggestion is that he was secreting the ammunition just before the search. Didn't make that argument. But the reality of it is, and the reason that the government takes that position is that the evidence at the hearing established that there was a bank robbery on the 12th of March at 9.36 a.m. Officers followed a GPS tracker that was put in the money to this house. They located Mr. Patton there with others, arrested them that same day the search is occurring, that same day he was interviewed at the police station, and there is this statement on cross-examination where the special agent, when asked to agree with a statement, this is a picture of the room that Mr. Patton had come out of, and the agent says yes. There's a discussion in appellants in the reply brief about, well, that doesn't really mean anything, but it does, because special agent Floorshoots, who testified, would only be able to comment on when Mr. Patton came out of that particular room when law enforcement was there. He would have no other connection or reason to be at the house to comment on any other time that he came out, and so that's why the government references it. But really, one of the key elements in this case is that mail, because that is an item, it's a personal effect. It's an item of venue, I think, is what the court in Cruz was referencing, that this was mail, one piece of mail just had Mr. Patton's name. Another piece of mail had his name, and it was addressed to him at that location. And that particular fact is something that is a thread through the cases that are cited in the government's briefs, because that establishes knowledge and dominion not just of that room, but in that particular drawer, because it's key in this case that that mail was right there with this ammunition in this case. And it's not unknown what the mail is. There was a fair amount of discussion about the mail and when it got there and who could have put it there, because the special agent identified one of those pieces of mail, and it appeared to come with a debit card, and it was his experience that that would be for some sort of state benefit. He described why he thought it came with a debit card. It had an insert that said, select your pin, that sort of thing. It's not unknown that it clearly was open. He's describing the contents. It's not unknown when it arrived. We can establish that it was a relatively short period of time, because he testified Mr. Patton was only released about six weeks before, and that he would assume, based on his understanding of how these benefits are distributed, that they would not have sent that to that house to Mr. Patton without verifying with him that that is where they should send it to, and knowing that he would be there to receive it. And so in other words, the agent agreed with the comment that, no, I wouldn't expect that they would send that when he's still in custody. And so there is something in this case with regard to the timing of mail that's not present that the government saw in any of the other cases, that there's any requirement that we have to know when did that mail get to be in that place, and how did it get there. The fact that it was there was what was important. So in other words, in the other cases, there's numerous cases that are cited between the parties in this case about mail or identification, but in none of those was there comment on when that came to be there. It was relevant that it was there, that it was in the defendant's name, and it was in that address. So for example, some of the cases identify that the defendant's identification or Social Security card were present. And those things, as common sense and just personal knowledge of the way the world works, tells you that you can have those for many, many years. It's not the age of those things, it's the fact of where they're located. And some of the cases have stressed when it is the case that that item, personally linking to the defendant, is right there with the contraband. Some of the cases, it's been sufficient when it's just in the same room. And you may have mentioned this, but the dates on those letters, I didn't catch them. Were they pretty recent letters, or were they older letters? They weren't dated, but the evidence was from the special agent that because they seemed to appear to relate to public benefits, for instance, like food stamps, something like that, that because Mr. Patton had only recently been released from prison, it was expected in his experience that they would have been mailed after that period of time. And so we're just talking about a six-week period of time that he was on supervised release. I see. And so those are important. I think it's important also that not only was there mail and ammunition in that drawer, but there also was an empty holster. And so there is this discussion that the appellant in argument talked about that it's either one or the other. How do we figure that out? But there is another option, and that is that it could be both. These cases, when I talk about that nexus, sometimes we're determining is it this person, or is it this person, is it both, or possibly as in Cruz, is it neither that possesses this item? So the fact that Mr. Bergen claimed that property is really could establish joint possession, it doesn't mean, it doesn't negate the fact that Mr. Patton clearly had knowledge and control over that contraband. I want to just talk about the harmless error portion of the brief. In this particular case, while the record does not set out in exact detail all of the steps in terms of for instance, the district court acknowledged that this was a B felony. It was the most serious. The district court references the revocation table, which is under 7B1.4 in this case. So even if this court finds that there was error with the finding of the constructive possession, that error is harmless because the record made by the district court is sufficiently detailed to demonstrate that the district court understood the difference that even if it's not the B felony, the district court is presumed to know the law and has referenced the revocation table. It would have been a lower range of punishment, and with those two alternatives, the district court made plain that it would have given the same sentence after referencing the statutory factors. On that precise point, what relevance is there that the district court actually went above the guidelines range and that it's unclear whether, you know, why or whether the district court would have otherwise given an upward departure from the range? I'm sorry, is the question how do we know that? No, no, my question is what relevance is there to that? I mean to your harmless error argument, which is that it's unusual. It would be one thing if we were looking at, you know, something on the high end of the range, but here we actually have a situation where there's a departure from the suggested range. Is that relevant in any way? Well, with this particular case, with the B violation, looking at the revocation table, the range of punishment that was announced as the correct range by the district court was 21 to 27 months, I believe. And in looking at the revocation table, which again the court is presumed to be aware of, the only lesser violation would be a C violation, and at that same criminal history category, which was a 6, it would be a range from 8 to 14. And so the government's position is that if the defense is, or if the appellant is arguing that there was an error, and therefore that resulted in the improper decision on the range of punishment, that the court made the sufficient record to indicate that that record was harmless, because the court, based on statutory factors and some aggravating circumstances, including the short amount of time Mr. Patton was on supervision and the seriousness of these associations, that the court still would have selected a sentence of 21 months. As the court sentenced him, it was at the bottom of the range, right? Correct. There was no upward variance or departure. It would only be in the alternative that it would be an upward. That's correct. Yeah, only if the construction didn't work. I see. I understand. Sorry. Okay, Mr. Sternberg, would you care to make rebuttal? For 30 seconds, yes, Your Honor. You may. We heard a lot about the government's cases just now. I'll note that all except two cases the government relies on in their brief, Cruz and Johnson, are where it was the defendant's own residence, completely irrelevant to this case, because there are no heightened requirements at issue. We've already, Cruz also, I don't know why they rely on it, because the court reversed the finding of constructive possession there, holding that the evidence was not sufficient. And the other evidence that it wasn't just my client's room was the holster to the gun, which wasn't his gun. The gun was actually found in Mr. Bergen's room itself. What do you mean the other cases were cases where it was not the defendant's residence? Sorry. You mean as opposed to this case? The government cites the Claiborne, Boyd, Vanover, and Cody cases from this court. In all of those cases, it was the defendant's actual full-time residence. You're distinguishing between a full-time residence and a part-time residence as in this case. And more than just his full-time residence, in those cases it was the defendant, well in Claiborne, the defendant was the only person who lived there at all. Those are inapposite because they don't have the heightened requirements. Well, we'll read them all carefully. Of course you will. We appreciate the argument. Thank you both for your presentations. Thank you, Your Honor. The case is submitted and the court will file an opinion in due course. Thank you.